UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KRISTINE MARIE JACQUAY,<br>        Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 3:21-CV-285-JPK |
| KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,<br>        Defendant. | )<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 23], requesting that the May 21, 2020 decision of the Administrative Law Judge (ALJ) denying her claim for disability insurance benefits be reversed and benefits awarded. For the following reasons, the Court grants Plaintiff's request for remand, but declines to award benefits.

## PROCEDURAL BACKGROUND

On November 23, 2018, Plaintiff Kristine Marie Jacquay filed an application for disability benefits, alleging disability beginning November 10, 2017. Plaintiff's application was denied initially and on reconsideration. (AR 62-99).[1] Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on April 3, 2020. (AR 33-61). On May 21, 2020, the ALJ issued an unfavorable decision, making the following findings:[2]

> 1. The claimant's date last insured is September 30, 2022, for purposes of Medicare.
>
> 2. The claimant has not engaged in substantial gainful activity since November 23, 2018, the application date.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

3.   The claimant has the following severe impairments: asthma; migraines; major depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   … [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) subject to the following additional limitations: The claimant can stand, walk, or sit for six hours each out of an eight hour workday. She can never climb ladders, ropes or scaffolds; and no concentrated exposure to moving machinery and unprotected heights. Work with a moderate level of noise; and no concentrated exposure to fumes, dusts, odors, gases, and poor ventilation. With work that can be learned in 30 days, or less, with simple routine tasks; routine work place changes; simple work related decisions; and with occasional interaction with coworkers, supervisors, and the general public.

6.   The claimant is unable to perform any past relevant work.

7.   The claimant was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

8.   The claimant has at least a high school education and is able to communicate in English.

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled", whether or not the claimant has transferable job skills

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, since November 23, 2018, the date the application was filed.

(AR 17-27).

Plaintiff appealed, but the Appeals Council denied review. (AR 1-3). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for benefits, a claimant must establish that she suffers from a "disability," defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff argues that the ALJ failed to properly account for her mental impairments and her shoulder injuries in the RFC, and misapplied the Medical-Vocational Guidelines at step five by

analyzing her under the "light work" grid, rather than the "sedentary work" grid.[3] The Court finds no reversible error in the ALJ's treatment of Plaintiff's mental impairments, but the ALJ's treatment of her shoulder issues requires remand.

I.      **Plaintiff's Mental Impairments.**

At the time of the hearing, Plaintiff worked part-time in a remote position for a school district, but was suffering from anxiety and depression. She testified that in 2014, she was threatened by her former husband at gunpoint and had to temporarily leave her home, after which she began to develop panic attacks when driving. (AR 48-49). In her March 2019 function report to the agency, she reported that her "mind tends to wander," but she had no difficulty preparing "balanced" meals every day and completing three to four hours of housework. (AR 281-83). She had no problems socializing with others or dealing with authority figures, but handled stress poorly and became "anxious" with changes in routine. (AR 284-86).

The record indicates that she sought mental health treatment from several providers. In February 2018, she was diagnosed with "recurrent major depression in full remission" and generalized anxiety disorder. (AR 425). At that time, her symptoms suggested "minimal" depression and anxiety with "significant," but less than "moderate," functional impairment. (*See* AR 423) (diagnostic surveys). Over the following months, she continued to report anxiety, but frequently reported that she was stable or "doing okay," and satisfied with her medication plan, although she had some side effects from tapering off certain medications. (*See*, *e.g.*, AR 429, 436-

---

[3] Plaintiff also argues that the ALJ failed to "accurately describe the evidentiary threshold" for entitlement to disability benefits. (Pl. Br. 5-6). Specifically, she objects to the ALJ's statement that the record did not contain "sufficient objective medical evidence to substantiate" Plaintiff's allegations of pain and functional limitations. (AR 24). The Court finds no error or contradiction in the ALJ's statement. By definition, a record that does not show disability by a preponderance of the evidence does not contain "sufficient" evidence to award benefits. Language aside, it does not appear to the Court that the ALJ applied the wrong evidentiary standard. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("[W]e do not read the ALJ's [boilerplate] language that way. It is clear to us, given the context, that the ALJ merely used a polite way to say the weight of the evidence did not support all her claims.").

37, 444, 451-452). Plaintiff saw a therapist between November 2018 and January 2019 (AR 587-607), and the therapist wrote a letter indicating that Plaintiff had good understanding, memory, and concentration, and regular social relationships, although her social life caused some anxiety. (AR 607). At a consultation in January 2019, another therapist reported that she was tense, anxious, and tearful, but displayed "superior" intellect and insight, and fair "capacity for daily living." (AR 681-86). The only qualifying[4] medical opinions came from the state agency doctors, and the ALJ dismissed these opinions as "moot" because the record was updated after they were issued. (AR 24).

The ALJ summarized this evidence (AR 22-24), and found that Plaintiff's major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder were all severe impairments (AR 18). At step two, the ALJ found that Plaintiff had moderate limitations in "understanding, remembering, and applying information" and "interacting with others," and mild limitations in "concentrating, persisting, and maintaining pace" and "adapting or managing oneself." (AR 20). The ALJ found that Plaintiff did not meet the criteria for a Listing, but limited her to light work with a "moderate level of noise . . . that can be learned in 30 days, or less, with simple routine tasks; routine work place changes; simple work related decisions; and with occasional interaction with coworkers, supervisors, and the general public." (AR 20-21).

Plaintiff objects that the RFC was not detailed enough and did not account for all her impairments. (Pl. Br. 7-12). First, Plaintiff cites a line of cases indicating that "platitudes" such as "simple, routine tasks" do not necessarily account for a person's difficulties in concentration,

---

[4] The record contained four letters (AR 607, 623, 638, 681) from counselors and therapists. The letters mainly confirmed that Plaintiff was seeking therapy for anxiety and depression, without suggesting any functional limitations. The ALJ found that these were not "acceptable" medical sources, see 20 C.F.R. § 404.1502(a) (as relevant here, an "acceptable" medical source is a licensed physician or psychologist), and accordingly found them "minimally persuasive" (AR 24). Plaintiff does not contest these findings.

persistence and pace. *E.g.*, *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Clearly, not all issues of "concentration" or "pace" can be resolved by making tasks simpler. *See, e.g., Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (noting that "unskilled" work is defined as work that can be quickly learned by demonstration: "[W]hether work can be learned in this manner is unrelated to the question of whether an individual with . . . difficulties maintaining concentration, persistence, or pace . . . can perform such work."); *see also* SSR 85-15, 1985 WL 56857 (January 1, 1985), *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job."). But a limitation to unskilled work can account for concentration difficulties if the record indicates that it addresses the underlying symptoms. *See, e.g., Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) (holding that a restriction to "work requiring the exercise of only simple judgment . . . specifically account[ed] for . . . concentration difficulties").

In this case, the ALJ explained her findings about Plaintiff's concentration, persistence, and pace: Plaintiff had only mild limitations in these areas, because "[m]ost mental status examinations note no abnormality in this area, but her complaints of anxiousness and physical pain would have some impact on her overall functioning in this domain." (AR 20). Plaintiff does not challenge that finding, and the ALJ cited numerous treatment notes to support it. (*See* AR 23-24, citing, *e.g.*, AR 415, 432, 455-56). The RFC contained a restriction to unskilled work to relieve Plaintiff of "additional pressures" of the workplace, but the ALJ found that the evidence did not establish the need for any further limitations in this area. (AR 25); *see Pytlewski*, 791 F. App'x at

7

616-17 (a restriction to "simple, routine tasks and limited interactions with others . . . may be adequate [for] a claimant with 'stress- or panic-related' limitations").

Plaintiff does not directly point to any evidence that the ALJ ignored. Instead, she argues the RFC should have been "more granular." (Pl. Br. 8). She notes that "the Commissioner recognizes some 14-20 functions that are critical to performing unskilled work," only a few of which appeared in this RFC. Pl. Br. 9 (citing POMS DI 25020.010; 20 C.F.R. § 404.1568; SSRs 96-9p, 96-8p, and 83-10p). She argues that her anxiety and panic attacks warrant more limitations, such as in responding appropriately to supervisors and coworkers, asking for help, dealing with criticism, and attendance. (*Id*. at 10).

Stretched to its natural conclusion, Plaintiff's argument could justify almost any limitation. Anxiety *could* affect a person's attendance, relationships with co-workers, ability to deal with criticism, and so on. But the ALJ did not need to address 20 different functions simply because anxiety was mentioned. *See Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) ("[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks," can adequately account for psychological symptoms). The claimant has to show why her particular impairments would create those specific limitations. *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was Weaver's burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work.")).

To the extent that evidence appears here, the ALJ considered it. For example, Plaintiff testified that at a previous job in a school, "[t]he classroom was unorganized and we had kids that were basically whining all day and that kind of spiked my anxiety. We had a couple of kids that needed to be showered on arrival because of a bed bug situation . . . I experienced a lot of anxiety and I could not keep that job." (AR 51). How much of this difficulty was related to Plaintiff's

8

limitations, and how much of it was due to the fact that this was an unusually stressful job? The ALJ considered this testimony (AR 22-23), along with the medical evidence, and concluded that Plaintiff could do an easier job with limited social interaction and no more than a "moderate level of noise." (AR 21). Perhaps another ALJ would answer the question differently, but it is not the Court's role to re-weigh the evidence, nor is that a basis for remand.[5] *McKinzey*, 641 F.3d at 890.

## II.     Plaintiff's Shoulder Impairment.

The ALJ considered evidence that Plaintiff was suffering from shoulder pain, but found that it "did not appear to meet the 12-month durational requirement" for a disabling impairment. (AR 18). The ALJ restricted her to light work partly "in consideration of her . . . allegations of right shoulder and back pain," (AR 19), but there were no limitations on reaching or grasping, and it is not clear how the ALJ concluded that she could fulfill the other requirements of light work based on her shoulder injury. On review, it appears the ALJ misunderstood the evidence relating to Plaintiff's shoulder, leading to multiple errors that require remand.

Plaintiff began complaining of shoulder pain in April 2019. (AR 718, 859). By August 2019, her orthopedist recorded that the pain was 6 out of 10 and "getting somewhat worse." (AR 718). An MRI revealed likely arthritis with bone edema, but no rotator cuff tear. (AR 734-735). In October 2019, she reported receiving a cortisone shot the previous month, and stated that she was on her "3rd round of physical therapy." (AR 357-58). The ALJ found that Plaintiff "only attended two physical therapy sessions for her shoulder" (AR 18), but is not clear how the ALJ arrived at

---

[5] The same conclusion applies to Plaintiff's panic attacks. For example, Plaintiff argues that her mental impairments warranted limitations related to "attendance," presumably because of the panic attacks. But as the ALJ observed, the evidence of panic attacks mostly arose in the context of driving on the highway (*see* AR 48, 284, 419). Plaintiff did not report or testify to attendance issues at previous jobs, and she reported to medical providers that she had no difficulty making scheduled appointments or meetings. (*See* AR 420). Another ALJ could have interpreted the potential for panic attacks more broadly, but Plaintiff does not point to anything specific that would require that inference. The ALJ's findings here were supported by substantial evidence.

that conclusion, because the therapists' records indicate that Plaintiff attended at least nine sessions. (*See* AR 761 ("Today [November 6] is 9th PT treatment")). The distinction is significant, because the ALJ relied on Plaintiff's purportedly brief treatment to conclude that her shoulder impairment was not serious. (*See* AR 19).

A claimant is not eligible for benefits unless the disabling impairment would last for at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. It appears the ALJ assumed that Plaintiff abandoned her physical therapy because her shoulder was no longer hurting, so the impairment must not have lasted 12 months. But the record indicates that the shoulder problem was ongoing in some form, and ALJ ultimately acknowledged that by citing it as a basis for restricting her to light work. (AR 19). The finding that Plaintiff's shoulder impairment did not meet the 12-month durational requirement was not adequately explained.

The ALJ further stated that "the last [shoulder] treatment contained in the medical evidence of record" was in November 2019. That finding appears to be contradicted by the record. At her physical therapy appointment on November 6, 2019, the therapist wrote that she "started to go to the chiropractor" and "feels a bit better since." (AR 761). The chiropractor's notes indicate that he treated her shoulder in November and December. (AR 825-833). On November 20, 2019, her shoulder pain had "gone from 8 to 2, getting better." (AR 827-828). By December 6, 2019, the pain had "gone to a numby mild pain, seems to wiggle." (AR 829-830). On December 10, 2019, she had pain in her right neck "radiating to her shoulder." (AR 830). It appears that she was prescribed exercises to do at home. (*See* AR 831-33). At the April 2020 hearing, roughly a year after her initial shoulder complaint, Plaintiff testified that she was still going to physical therapy "two to three times a week, and if this pain does not go away, [the orthopedist is] suggesting that [she] have surgery." (AR 52). However, the therapists' notes did indicate that the last appointment

she attended was on November 6, roughly six months before the hearing.[6] Plaintiff's ongoing physical therapy is not documented in the record, but if her testimony is true, the impairment would have lasted for twelve months.

When the lack of documented treatment is a basis for finding a claimant's symptoms inconsistent with the evidence, the ALJ must "consider possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. [The ALJ] may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." SSR 16-3p, 2016 WL 1119029 at *8 (Mar. 16, 2016); *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)). This situation illustrates the importance of that rule: the ALJ assumed Plaintiff pursued only minimal treatment based in part on a misreading of the medical notes. Plaintiff testified that she was still seeking physical therapy, but the ALJ ignored that testimony in the decision, and did not attempt to clarify the contradictory evidence. Although there are no records of shoulder treatment after December 2019, there are no records of any kind from January 2020 until the April 3, 2020 hearing, so it may be that the record was not updated. Regardless, the ALJ needed to "explore" the reasons for the lack of treatment, if indeed Plaintiff stopped treatment.

If the shoulder impairment was ongoing, it needed to be considered in the RFC, regardless of whether it was severe or non-severe. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). The

---

[6] On December 6, the therapists wrote: "Patient has not returned as recommended and contacts were attempted to schedule patient without success." (AR 760).

ALJ did so in this case, restricting Plaintiff to light work partly "in consideration of her . . . allegations of right shoulder and back pain." (AR 19). But is unclear how the ALJ arrived at the conclusion that Plaintiff's shoulder issues could be accommodated with light work. The most prominent difference between "light" work and more rigorous work is that the worker avoids lifting heavy weight or exerting a lot of force. *See* 20 C.F.R. § 404.1567; Dictionary of Occupational Titles, App'x C, § IV(c) (comparing light, medium, and heavy work). But a person doing light work still has to lift up to "20 pounds occasionally and 10 pounds frequently," "and/or a negligible amount [ ] constantly," *see id.*, which means that Plaintiff's work could involve lifting for several hours a day.[7] The ALJ did not rely on a medical opinion in crafting the RFC, and there was no substantive explanation as to why "light work" was appropriate here as opposed to some other (or additional) restriction. The ALJ may have been unsure what restrictions to impose given Plaintiff's ambiguous record of recent shoulder treatment, but if so, that would be cause to seek an updated medical opinion[8]; "light work" is not a fallback or catch-all limitation for a poorly-documented impairment. *See, e.g., Black v. Colvin*, No. 4:13-CV-79-PRC, 2015 WL 1005405, at *8-9 (N.D. Ind. Mar. 3, 2015) ("[D]espite finding Plaintiff not credible, the ALJ . . . reduced exertion to light [work] with other appropriate limitations . . . [but] did not explain how he found that Plaintiff could do light work, as opposed to less than light work.").

Unlike with Plaintiff's mental impairments, there was evidence here that seemed to support other kinds of restrictions. For example, the RFC contained no restrictions on reaching or handling,

---

[7] "Frequently" means "1/3 to 2/3 of the time"; "constantly" means "more than 2/3 of the time." Dictionary of Occupational Titles, App'x C, § IV(c).

[8] An ALJ must seek an updated medical opinion when the alternative is to "play [] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (quoting *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018)).

other than the restrictions on weight and endurance implied in the definition of light work. But Plaintiff had a positive Neer impingement sign (AR 718), which means "pain with passive shoulder forward flexion beyond 90 degrees."[9] "Aggravating factors" for her pain included fastening her bra and tying her shoes. (AR 691). She reported sharp pains with overhead movement. (AR 708). To her physical therapist, she reported "some difficulty" reaching a shoulder-height shelf or putting on a seat belt. (AR 766). These facts, none of which were cited by the ALJ, appear to support some limitation on reaching or handling; a restriction to "light work" does not account for limitations like these. *See Hill v. Astrue*, 295 F. App'x 77, 82 (7th Cir. 2008) (a limitation to light work did not adequately account for a claimant's shoulder arthritis, given evidence of pain and reduced range of motion). On remand, if Plaintiff's shoulder impairment is to be reflected in the RFC, the ALJ must explain how the restrictions in the RFC account for her limitations.

### III. Request for Award of Benefits

Plaintiff requests remand for an award of benefits. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Nonetheless, "[a]n award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* at 415. As described above, the record is unclear as to the state of Plaintiff's shoulder impairment. It is not clear that Plaintiff is disabled as defined in the Social Security Act, so the Court declines Plaintiff's request to award benefits and remands the case for further proceedings.

---

[9] *See* National Library of Medicine, Rotator Cuff Snydrome, https://www.ncbi.nlm.nih.gov/books/NBK531506/ (last accessed September 14, 2022).

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS in part** the relief sought in Plaintiff's Opening Brief [DE 23] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 14th day of September, 2022.

s/ Joshua P. Kolar<br>
MAGISTRATE JUDGE JOSHUA P. KOLAR<br>
UNITED STATES DISTRICT COURT